# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### DEL RIO DIVISION

GILBERT LEIJA, BRENDA LEIJA AND )
ROBERT LEIJA )
                               )
      Plaintiffs, )
                               )
V. )       CASE NO. 2:18-cv-00043
                               )
KICKAPOO TRADITIONAL TRIBE )
OF TEXAS and CHARLENE JIMENEZ )
                               )
      Defendant. )

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE COURT:

COME NOW GILBERT LEIJA, BRENDA LEIJA AND ROBERT LEIJA, Plaintiffs, and file this, their Original Complaint for Declaratory and Injunctive Relief,[1] and in support thereof, would respectfully show this Court the following:

## INTRODUCTION

1. This Complaint seeks a declaratory judgment as well as injunctive and other relief pursuant to 28 U.S.C. §§ 2201-2202 in connection with two Suits Affecting the Parent Child Relationship involving Charlene Jimenez, Gilbert Leija, their two minor children: JOL and ICL and Brenda and Robert Leija (Gilbert's brother and sister-in-law), with whom the children have lived since 2013 because of ICWA litigation in Tribal Court resulting from Charlene's abuse and neglect of all her six children.

---

[1] A separate Application for Preliminary Injunction will also be filed in accordance with Local Rule CV-65.

2. The prior state court SAPCR and Tribal Court ICWA litigation and Charlene's 2015 Tribal SAPCR case were all resolved between the parties when Charlene and Gilbert entered into a Mediated Settlement Agreement regarding conservatorship, access, possession and support of their two children on June 24, 2016. The Tribal Court litigation was concluded on July 27, 2016 by Final Orders entered by that Court, finding the children were no longer in need of ICWS services. Ultimately an Agreed Order was entered in state court in accordance with that agreement on November 9, 2016 and a nonsuit was filed in Charlene's Tribal Court SAPCR.

3. Pursuant to that order, Gilbert would be appointed the managing conservator with the right to establish the residence of the children, and Charlene was not required to pay child support.

4. Just about a year after that agreed order was entered, Charlene moved to enforce, then later to modify that order on the grounds that Gilbert voluntarily relinquished primary care and possession of the children to another person. However, Robert and Brenda, with whom the children have been living since October 2013, intervened in the state court case seeking to be awarded sole managing conservatorship of both children. There were several hearings, a social study of the Leijas was commenced, and a jury demand was filed. After that, Charlene tried to transfer venue to Tribal Court. Then she simply filed a new SAPCR regarding ICL only in

Tribal Court. Despite Gilbert's objections to jurisdiction in tribal court, the court has wrongly retained jurisdiction over the SAPCR regarding ICL.

5. Tribal court jurisdiction over non-Indians such as plaintiffs is presumptively invalid, and the claims asserted against Gilbert in the Tribal Court Action do not fall within either of the two narrow exceptions to the presumption of non-jurisdiction. Moreover, no statute specifically grants the Tribal Court jurisdiction here. Specifically, ICWA does not provide Tribal Court jurisdiction over longer-term custody disputes between parents. Furthermore, Charlene not only consented to jurisdiction in State Court over the parent child relationship, but she entered into an Agreed Order to Modify the Parent Child Relationship on November 9, 2016, which includes I.C.L. Based on the patent lack of jurisdiction in Tribal Court, plaintiffs are not required to exhaust tribal court remedies.

6. Accordingly, plaintiffs seek (1) a declaration that the Tribal Court lacks jurisdiction over plaintiffs and that all orders issued in Case No. 18-160 are void; (2) a declaration that until further order of the 365th Judicial District Court in Case No. 12-06-27527-MCVAJA, the Agreed Order dated November 9, 2016 governs the relationship of the parties, including conservatorship and the right to establish residence of the children; (3) an immediate preliminary injunction against Charlene exercising exclusive possession over ICL; (4) an immediate preliminary injunction against

further proceedings in the Tribal Court; and (5) further relief as set forth below.

### PARTIES, JURISDICTION AND VENUE

7.  Plaintiff, Gilbert Leija, is a non-Indian individual residing in Maverick County, Texas outside the confines of the Kickapoo Reservation.

8.  Plaintiff, Brenda Leija, is a non-Indian individual residing in Maverick County, Texas outside the confines of the Kickapoo Reservation.

9.  Plaintiff, Robert Leija, is a non-Indian individual residing in Maverick County, Texas outside the confines of the Kickapoo Reservation.

10. Defendant, Charlene Jimenez, is an individual member of the Kickapoo Tribe residing in Maverick County, Texas on the Kickapoo Reservation and can be served with process by service at her residence, 101 Riverpark Road, Eagle Pass, Texas  78852, or wherever she may be found within Maverick County, Texas.

11. The Kickapoo Traditional Tribe of Texas is a federally recognized Indian Tribe organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et. seq.* The Kickapoo Traditional Tribe of Texas is located within this District and the Tribe's principal place of business is located at 2212 Rosita Valley Road, Eagle Pass, Texas 78852 and it can be served with process by serving the Chairman of its Traditional Council, Estavio Elizondo, Menikapah, at 2212 Rosita Valley Road, Eagle Pass,

Texas 78852, or wherever he may be found within Maverick County, Texas.

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the question whether an Indian tribe retains the power to compel non-Indians such as Plaintiffs to submit to the civil jurisdiction of its tribal court is one that "arises under" federal law.

13. Venue is proper under 28 U.S.C. § 1391 because at all defendants reside in this District and because a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## FACTUAL BACKGROUND

14. Charlene Jimenez is a member of the Kickapoo Traditional Tribe of Texas. She has a history with Texas Child Protective Services dating back to August, 2004, for drug use (alcohol, cocaine and marijuana) and neglectful supervision of her children. Charlene gave birth to her first child, ES, on July 16, 2003, her second child, NS, was born on February 3, 2005, and her third child, HJ, was born on October 30, 2006.

15. When HJ was nearly two months old, on December 28, 2006, the Texas Department of Protective Services received a verbal order to place ES, NS and HJ in protective care due to a report alleging physical abuse and neglectful supervision of the children by Charlene. The report stated that Charlene had left the children with her aunt, who had no baby formula and that HJ was suffering from diaper rash. Charlene had not had any

contact with the family for two days. According to a KTTT Family Service Plan, during the investigation, Charlene at one point in time appeared to be under the influence while speaking to a security officer and did not appear to be concerned for her children at the time. On January 2, 2007, the District Court of Maverick County, Texas, ordered that the Department of Protective Services be appointed Temporary Sole Managing Conservator of the children.

16. On April 9, 2008, Charlene bore her fourth child, NJ. On or about July 2, 2008, all four of Charlene's children were placed in the custody of the Tribe by the KTTT Tribal District Court.[2] About a year later, on July 20, 2009, the KTTT Tribal District Court awarded full custody of the children to Charlene. The court ordered Indian Child Welfare (ICW) to conduct random welfare visits at her residence. Less than a month later, the Tribe again took custody of all Charlene's children. The Tribal Court appointed the Tribe Temporary Managing Conservator of ES, NS, HJ, and NJ. On March 14, 2012, Charlene was reunited and given custody of her children again.

17. A month later, JOL was born to Gilbert Leija and Charlene, an unmarried couple, on April 14, 2012.[3] Less than a month later, on May 20, 2012, the Tribal Police were dispatched to Charlene's home after an anonymous

[2] This was the first Tribal Court suit under the Indian Child Welfare Act (ICWA) regarding Charlene's children, Case No. 08-07-003.
[3] Three days later, on April 17, 2012, Gilbert and Charlene executed an Acknowledgement of Paternity regarding JOL.

child welfare concern call was received. Upon arrival, the officer was met at the door by Charlene's older four children (aged 4, 6, 7, and 9) who were crying and saying their mother had not been home all day the day before or the day of the officer's arrival. They were all hungry, having had only had pizza that morning, and there were beer cans scattered all over the living room. There were no adults present. The police determined it an emergency and took all four children to police headquarters, fed them and then contacted Indian Child Welfare, which, due to the severity of the situation relocated them to the Kickapoo Traditional Tribe of Texas' Foster Home located on the reservation. A search was conducted for Charlene, to no avail and she never contacted the police to ask about her children's whereabouts.

18. On June 4, 2012 the Texas Attorney General's office initiated a suit affecting the parent-child relationship regarding JOL, seeking the determination of parentage by Gilbert and the establishment of child support obligations on his part.

19. On June 8, 2012, the Department of Indian Child Welfare Services, on behalf of the Kickapoo Traditional Tribe of Texas filed an Original Petition to Determine Parental Rights, Establish Conservatorship and/or Termination of Parental Rights in Tribal Court.[4] The petition was filed regarding all of Charlene's children, including JOL asserting that there

---

[4] This was the second ICWA lawsuit in Tribal Court (Case No. 12-060), and it was eventually consolidated with the prior ICWA lawsuit to include all five of Charlene's children: ES, NS, HJ, NJ, and JOL.

was probable cause to believe that each of the children was a youth in need of care and the subject of abuse and neglect by Charlene. The Tribe alleged that it would not oppose temporary placement of JOL with his father, Gilbert, during the pendency of the lawsuit.

20. On June 18, 2012 the Tribal Court entered Temporary Orders regarding JOL finding that he had been the subject of abuse and neglect and ordering that the Tribe be appointed his Temporary Managing Conservator. He was placed with his paternal grandmother, Maria del Soccoro Leija. Both parents were afforded liberal visitation and a home study was ordered for both parents' homes. However, the ICWA proceeding wore on.

21. On August 2, 2012 after a psychological evaluation of Charlene Jimenez, the recommendation was made to not return the children to her. Twelve days later, Charlene was admitted as an inpatient to La Hacienda Treatment Center. In November, 2012 Charlene was arrested for public intoxication.

22. On October 9, 2012, an Order in Suit Affecting the Parent-Child Relationship was entered in the State Court SAPCR case filed by the AG. In it, the Court found that Gilbert was JOL's father, ordering him to pay future and retroactive child support, made Charlene and Gilbert joint managing conservators and allowed Charlene to determine the child's residence. However, the Order explicitly stated that the court was

entering "no orders regarding possession and access as this issue is currently being addressed by the Tribal District Court of the Kickapoo Traditional Tribe of Texas."

23. By February 22, 2013, JOL was in foster care and a home study of his maternal grandmother was done. On May 24, 2013 an emergency motion to supplement temporary orders was filed because Charlene had depleted all of her children's trust accounts. On June 17, 2013, counselor Erin Hernandez made the recommendation that JOL not have face-to-face contact with Charlene.

24. On September 11, 2013, Charlene gave birth to her sixth child, ICL; Gilbert was the father. The same day an emergency order was entered in the ICWA proceeding in Tribal Court granting the Tribe Managing Conservatorship of ICL but placing the child in the home of Gilbert and Charlene.

25. On October 24, 2013 a Petition for Emergency Temporary Orders was filed by the ICWS requesting that ICL be placed in the home of Maria del Socorro Leija (along with JOL), that Charlene have no further visitations with JOL or ICL until further order, and that ICWS remain the temporary sole managing conservator of all the children. On October 25, 2013, Emergency and Temporary Orders were entered: Gilbert and Charlene had argued and broken up, and ICL was removed from Charlene's care because she was drinking and had a car accident in Mexico. Charlene

voluntarily dropped ICL off at foster care. From November, 2013 through January, 2014 Gilbert and his mother, with whom he lived, continued to retain physical custody of both children.

26. On June 11, 2014, the Tribal Court ordered that a home study be prepared of the home of Robert Leija (Gilbert's brother), and his wife, Brenda. On October 8, 2014, the caseworkers that performed the home study of the home of Brenda and Robert Leija filed their report with the court. The report was extremely favorable to Brenda and Robert and the caseworkers recommended that JOL and ICL both be placed in the home of Brenda and Robert Leija, with the ICWS retaining temporary sole managing conservatorship of JOL and ICL. The same day, Robert Leija filed a Motion for Foster Care Placement of both children with him and his wife, Brenda.

27. On December 10, 2014 the Tribe filed a Motion to Supplement Temporary Orders seeking cancelation of all visitation by Charlene with the children. The reasons were that Charlene 1) had recently filed police reports against an ICW caseworker, and against Robert Leija, 2) had been reported to have assaulted someone while she was under the influence, 3) had made a report against an unwanted intoxicated person in her residence, 4) had made a report for assault in the 2nd degree while she was under the influence, 5) and had tested positive for an alcohol test. On December 16, 2014 a psychological evaluation of Charlene concluded with the

recommendation against returning ICL to her custody. The psychologist found nothing in the interview or psychological measures suggesting that Charlene had benefitted from previous interventions to change her substance abuse habits. She opined that Charlene must abstain from the use of alcohol and any other illicit substances for a substantial and significant period of time before she can undertake the raising of her six children.

28. On May 27, 2015, Gilbert Leija filed a Petition to Modify Parent Child Relationship in the State Court SAPCR.[5] He alleged that he was the father of both JOL and ICL and had standing to bring the suit. He sought modification of the October 9, 2012 order alleging that the circumstances of JOL and ICL had materially and substantially changed since the rendition of the October 9, 2012 order. He requested to be appointed the person with the right to designate the children's primary residence and that Charlene be allowed supervised visitation with the children. Gilbert further alleged that Charlene had a history of parental neglect toward the children and requested the court to deny her access to the children.

29. On August 12, 2015 the Kickapoo Traditional Tribe of Texas, though not a party to the State Court SAPCR, filed a Plea in Abatement and Plea to the Jurisdiction contending that the Tribal court had continuing exclusive jurisdiction over both children because it had been declared as the

---

[5] At some point in 2015 a third lawsuit was begun in Tribal Court when Charlene filed a SAPCR relating to JOL and ICL there. That was case number 15-0120.

temporary managing conservator of the children in the prior ICWA lawsuit. On December 23, 2015, Charlene filed a Motion to Transfer Venue, seeking a transfer of the State Court SAPCR to Tribal Court because the children had allegedly resided on the Reservation for the six months preceding the filing of the Motion to Modify. However, this was false. Instead, Charlene intentionally misrepresented in this pleading that the children had resided on the reservation: neither child has ever resided on the reservation.[6] Rather, since October 2013 when ICL was removed from Charlene, they resided with Gilbert and his brother and sister-in-law Robert and Brenda Leija.

30. On June 24, 2016, the parties, Charlene and Gilbert, entered into a (Partial) Mediated Family Settlement Agreement after a successful mediation with the Honorable Judge Elma Teresa Salinas Ender. This settlement explicitly resolved all issues in all three lawsuits pending: ICWA Case No. 12-060 and ICWA Case No. 15-0120 pending in Tribal Court and Case No. 12-06-27527-MCVAJA pending in the 365th Judicial District Court of Maverick County. That Agreement was explicitly made pursuant to sections 153.0071(c-e) and/or 6.602 of the Texas Family Code and thus was not subject to revocation.

31. The parties specifically agreed that Gilberto Leija was the father of JOL and ICL, that they would have joint managing conservatorship of the

---

[6] Charlene did remove ICL from Tribal Daycare on April 17, 2018 and secreted her away on the reservation, and now is exercising exclusive possession of ICL in violation of the Orders in place in the 365th Judicial District Court of Maverick County.

children, but that Gilbert had the right to determine the primary residence of the children. They agreed to standard access and possession with liberal visitation to include participation in and attendance at Tribal traditional and cultural activities. They agreed that child support was waived from Charlene, but Gilbert would claim the income tax exemption for both children. They further agreed that Gilbert and Charlene would split the Tribal Court money given to the children in July and in December. They further agreed to enter an agreed order pursuant to the MSA in the State Court SAPCR lawsuit. They further agreed to enter an agreed order of nonsuit of the SAPCR filed in the Tribal District Court.

32. On July 13, 2016 a hearing was held in Tribal Court and on July 27, 2016 Final Orders were entered by the Tribal Court. The Final Orders stated that the children subject to the lawsuit were "no longer youths in need of care." Thus, the court ordered that ICWS was relieved from court ordered conservatorship and from any previously ordered duties or monitoring of the case. Further, the court ordered that the children subject of the suit, JOL and ICL be reunified with Gilberto Leija and Charlene Jimenez, but placed in the home of Gilberto Leija with the terms and conditions as agreed to in the Mediation held on June 24, 2016. Finally, the court ordered that the Indian Child Welfare Case numbered 12-060 be closed.

33. On September 28, 2016, a hearing was held in the State Court SAPCR in which the Gilbert proved up the Agreed Mediated Settlement Agreement

on the record. The court found it had jurisdiction over the parties and the subject matter and that the parties had entered into an MSA and the court approved the agreement, and ordered that the provision in the former order designating Charlene as the conservator having primary custody and the right to choose the children's residence was set aside and ordered that Gilbert was awarded primary custody of the children with the right to choose their residence. On November 9, 2016 an Agreed Order to Modify the Parent-Child Relationship signed by Charlene, Gilbert and their attorneys was entered in the State Court SAPCR. This Order mirrored the terms of the MSA.

34. On June 30, 2017, a mere seven months after entry of the Agreed Order of modification, Charlene filed a Motion for Enforcement of Possession or Access and Order to Appear in the State Court SAPCR suit. She recited that the court had "continuing exclusive jurisdiction of this case as a result of prior proceedings." Charlene claimed that Gilbert refused to allow her possession and access to the children as ordered and sought additional access to "compensate" for access denied.

35. On October 18, 2017, just shy of a year after the Agreed Order was entered, Charlene filed a Motion to Modify and recited that the court had continuing exclusive jurisdiction over the suit and of JOL and ICL. She also alleged that Gilbert was the father of both of those children. The Motion stated, falsely, that the order to be modified was not based on a

mediated settlement agreement. Charlene alleged that the reason for modification was that Gilbert had voluntarily relinquished possession of the children to another person for six months. Thus, she requested modification of the order such that she would be the parent with the right to establish the primary residence of both children.

36. On December 5, 2017 Brenda and Robert Leija intervened in the State Court SAPCR seeking conservatorship of JOL and ICL. In it, they stated that Gilbert had voluntarily relinquished control and possession of the children for a year or more, a portion of which was within ninety days preceding the date the intervention was filed, and alleged that their appointment would be in the children's best interest. Also, on the same day an Agreed Motion for Preparation of Social Study of Brenda and Robert Leija was filed. The court ordered that a social study be completed by January 29, 2018.[7]

37. On March 7, 2018, the Leijas filed a Second Amended Petition in Intervention for Conservatorship, with a Jury Demand, requesting that they be appointed sole managing conservators of the children, and that they be allowed the exclusive right to direct the religious and moral training of the children. They further requested that Charlene be awarded supervised possession, be obligated to pay child support, and be ordered

---

[7] During the commencement of the child custody evaluation, Charlene was cooperative and interviewed with the evaluator. Once the child custody evaluator requested tribal criminal reports on Charlene and her daughter ES, along with access to Charlene's children's school records and authorization to speak to her children at school, she became noncompliant. The child custody evaluator is still requesting these items and the evaluation still has not been completed.

to provide 48 hour notice prior to exercising visitation and prior to exercising Kickapoo holidays. They further requested that the children be allowed to exercise Catholic holidays, and that Charlene not have access to the children on Easter, Christmas or New Year as the Kickapoo do not recognize these holidays. Further, the Leijas requested an order for the parties to communicate via Our Family Wizard, an order that the Leijas manage the Tribal Monies received for the benefit of the children, and that Charlene be required to provide clean hair follicle tests for alcohol prior to exercising possession of the children.

38. Two days later, on March 9, 2018, Charlene filed a Motion to Transfer Proceedings to Tribal Court. In support she claimed that the children were both considered to be Indian children as defined by the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1903(4), in that they are under eighteen years of age and are members or eligible to be members of the KTTT. Charlene further alleged that the proceeding in State Court was a child custody proceeding as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(1).

39. The Leijas filed their response to Charlene's Motion to Transfer Venue on March 29, 2018 at 9:09 a.m. In it, they alleged that Charlene had all of her children removed by IWCS for neglect and abuse and that on June 24, 2016 the parties entered into a mediated settlement agreement wherein the 365th Judicial District Court would retain exclusive jurisdiction of the case,

as the children had never resided on the Reservation. They further alleged that on July 27, 2016 an order was signed by the Tribal Court closing the ICWA suit and adhering to the terms of the mediated settlement agreement. They further alleged that on November 8, 2016 the State Court entered an Agreed Order to Modify the Parent-Child Relationship designating Gilbert the joint managing conservator with the sole right to designate the primary residences of the children. They alleged that neither child had ever resided on the Kickapoo Tribal Reservation, and that they had resided with the Leijas since October 2013, when they were removed from Charlene's possession by ICWS because she was an unfit mother. The Leijas further contended that Charlene's venue motion was untimely, that 25 U.S.C. § 1903 did not apply to the instant SAPCR proceeding and that the children had never resided on the KTTT Reservation.

40. Later that same day (March 29, 2018), at 1:50 p.m. Charlene filed an Original Petition in Suit Affecting the Parent-Child Relationship and for Issuance of a Temporary Restraining Order regarding ICL only in the KTTT Tribal District Court.[8] Incredibly, Charlene contended in this petition that no court had continuing jurisdiction over the suit or the child subject of the suit. She suggested that only JOL was subject of the State Court SAPCR lawsuit, claiming that ICL was "incorrectly added" to that lawsuit as part of the modification orders. She claimed, incredibly, that

---

[8] The case was styled *In the Interest of I.C.L, a Child* and numbered 18-0160.

there "has been no Petition seeking to establish parentage or to establish the parent child relationship in the 365th Judicial District Court" between ICL and Gilbert and that the Agreed Order does not establish Gilbert as the father of the child. As a result, Charlene contended, no court had continuing jurisdiction of the suit or over ICL.

41. On April 3, 2018 Charlene obtained a temporary restraining order in Tribal Court, which ordered that Gilbert was restrained from "removing the child from the possession of Applicant Charlene Jimenez" although Gilbert is the primary conservator with the right to choose ICL's residence under the November 9, 2016 Order in the 365th Judicial District Court. It set a hearing for April 11, 2018 in Tribal Court for a determination of whether Charlene should be appointed sole managing conservator of the child and Gilbert should pay child support.

42. On April 10, 2018, Gilbert filed a Plea to the Jurisdiction in the Tribal District Court. He contended that there was a pending SAPCR modification in State Court and noted that there was a prior Mediated Settlement Agreement in which the parties agreed to drop all proceedings in Tribal Court, and that the State Court would retain exclusive jurisdiction as the children never had resided on the Reservation. He further contended that the parties and the court had entered an Agreed Order in the state court SAPCR affecting ICL on November 18, 2016.

Consequently, Gilbert argued the Tribal Court had no jurisdiction over the SAPCR Charlene filed regarding ICL.

43. On April 11, 2018 the parties entered into an Unopposed Order Extending Temporary Restraining Order and Order Setting Hearing for Temporary Orders. That Order contained the same provisions regarding possession, and reset the hearing for April 25, 2018.

44. On April 18, 2018 the KTTT, though not a party to the state court SAPCR lawsuit, filed an Amicus Curiae Brief supporting Charlene's Motion to Transfer the case to Tribal Court. Also on April 18, 2018, Charlene filed a Second Amended Motion to Transfer Proceedings to Tribal Court, and a Motion to Abate the state court SAPCR proceeding based on her prior filing of a motion to transfer venue.

45. On April 25, 2018 the Plea to the Jurisdiction was heard in the Tribal Court. Charlene argued that Gilbert had never been adjudicated the father and ICL was never properly part of the state court SAPCR proceeding, so the Tribal Court had concurrent jurisdiction with state court over ICL. She also asserted that she had defenses to the enforcement of the mediated settlement agreement, which resulted in the agreed order in the state court SAPCR and that the MSA was void because a separate SAPCR proceeding (apart from the original state court SAPCR regarding JOL) was required to be filed for ICL, but was not.

46. The court indicated that it did not believe the state court had exclusive jurisdiction over the case, and that Tribal Court had concurrent jurisdiction with the state court over the case. He added that in cases of concurrent jurisdiction the court would look to the best interests of the children, and whether they may be KTTT members regardless of whether they lived inside the jurisdiction or not. He noted that "since this Court had previous pleadings on file and had gone and seen this case and --- and had multiple hearings on this case for multiple years, then I --- I'm going to deny the plea to the jurisdiction." He added that the Tribal Court had jurisdiction based on the fact that they were KTTT children.

47. On the same day, April 25, 2018, the extended TRO expired by operation of law.

48. On April 17, 2018 Charlene took ICL from Tribal Daycare into her possession. Since that date she has refused to allow Brenda and Robert Leija to see ICL and sporadically allows Gilbert to see ICL. One visit Charlene allowed Gilbert about ten minutes and then took off with ICL while Gilbert was in the bathroom and did not allow ICL to say goodbye. JOL spent a weekend with Charlene and ICL (pursuant to visitation schedule in the November 9, 2016 Order) and he would not stop talking about ICL, and misses her even more now. JOL told the Leijas that ICL throws fits when its time for him to leave because she wants to come back home to the Leijas house with him. Then, according to JOL, Charlene

spanks ICL and tells her that she is fine and belongs with her mother. Charlene also told JOL that he belongs with her too, and that he will be living with her soon. JOL became scared after this and has been asking the Leijas repeatedly if this is true, and if ICL will ever return to the home they have shared for five years with their aunt and uncle. Based on these conversations, the Leijas are now very concerned that Charlene will kidnap JOL, despite the fact that the Order in the 365th Judicial District of Maverick County clearly still governs that relationship.

49. A written order denying and overruling Gilbert's plea to the jurisdiction in Tribal Court was entered on June 13, 2018.

## CLAIMS ASSERTED BY PLAINTIFFS

### Tribal Court has no jurisdiction over the child.

50. Absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. *Strate v. A-1 Contractors*, 520 U.S. 438, 445, 117 S. Ct. 1404, 1409, 137 L. Ed. 2d 661 (1997). In *Montana v. United States*, 450 U.S. 544, 565 (1981), the Supreme Court explained, "'the inherent sovereign powers of an Indian tribe'—those powers a tribe enjoys apart from express provision by treaty or statute—'do not extend to the activities of nonmembers of the tribe.'" *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two

exceptions. *Strate*, 520 U.S. at 446. The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare. *Id.*

51. Charlene and the Tribe rely upon the provisions of Indian Child Welfare Act (ICWA) in their efforts to support their claims that the Tribal Court has jurisdiction over ICL and Gilbert in Charlene's new SAPCR case. Specifically, Charlene contended in her Motion to Transfer the state court SAPCR into Tribal Court that the state court case was "a child custody proceeding as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(1)." Thus, she claimed, the KTTT Tribal Court "has continuing, concurrent, exclusive jurisdiction of the children the subject of this suit as a result of prior proceedings and due to the jurisdiction provisions contained within [ICWA] governing the removal, procedures and preferences for Indian children's custody placement." The KTTT argues the same thing in its Amicus Curiae brief supporting Charlene's transfer motion. These arguments completely ignore the clear wording of the pertinent provisions of ICWA and the case law interpreting it.

52. The ICWA does state that an "Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe…"

25 U.S.C. § 1911(a). However, 25 U.S.C. § 1903, "child custody proceeding" to mean and include:

i. "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;

ii. "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;

iii. "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and

iv. "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.

53. The section continues by adding that"[s]uch term or terms shall not include a placement based…upon an award, in a divorce proceeding, of custody to one of the parents." According to the Court in *In re Larch*, 872

F.2d 66 (4th Cir. 1989), "this statutory exclusion clearly indicates that a state court may lawfully award custody of an Indian child to a non-Indian parent in a divorce proceeding."

54. In that connection, courts have held uniformly that the term "child custody" as used in the provision of ICWA giving tribal court exclusive jurisdiction over certain issues is strictly defined. *Confederated Tribes of the Colville Reservation v. Superior Court of Okanogan County*, 945 F.2d 1138, 1140 n.3 (9th Cir. 1991). It **does not include the resolution of long-term custody disputes between the parents**. *Id.; see also In re Larch,* 872 F.2d 66 (4th Cir. 1989) (ICWA definition of child custody does not include an award of custody in divorce proceedings); *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510 (8th Cir. 1989) (ICWA not applicable when there was a parental conflict regarding custody of children after divorce); *Cox v. Cox*, 2000 ND 144, 613 N.W.2d 516 (N.D. 2000) (ICWA did not apply to a custody dispute in a divorce action initiated by a Native American mother, even where she wished to have custody so that she could place the child for adoption); *Application of DeFender*, 435 N.W.2d 717 (S.D. 1989) (ICWA does not cover custody disputes between an Indian child's natural parents; the placement of the child with either of her natural parents did not fit the statutory definition of custody proceeding); *In re Custody of Sengstock*, 165 Wis. 2d 86, 477 N.W.2d 310 (Ct. App. 1991) (child custody disputes arising in the context of divorce or separation proceedings are

not covered by ICWA); *Starr v. George*, 175 P.3d 50 (Alaska 2008) (ICWA divorce exception excepts from ICWA provisions custody awards to one parent in a divorce proceeding). The instant case presents a long-term custody dispute between the parents; it does not fit within the definition of "child custody proceeding" under ICWA. Consequently, the Tribal Court has no jurisdiction.

## Plaintiffs are not required to exhaust Tribal Court remedies.

55. This Court can and should grant plaintiffs the declaratory, injunctive and other relief requested in this Complaint without first requiring them to exhaust their remedies in the Tribe's court system with respect to the issue of the Tribal Court's jurisdiction.

56. Exhaustion is not required for several reasons. First, the tribal court action patently violates the parties' Mediated Settlement Agreement and Agreed Order in which they agreed that the 365th Judicial District Court of Maverick County, Texas would acquire continuing exclusive jurisdiction over the matters between them and in connection with their two children upon rendition of that final order. Because the 365th Judicial District acquired continuing exclusive jurisdiction as of November 9, 2016 per agreement of the parties, no other court of this state has jurisdiction of a suit with regard to either JOL or ICL, nor does any court of a sovereign nation, e.g. the KTTT Tribal Court. Thus, because the Tribal Court action

is patently violative of express jurisdictional prohibitions in the Texas Family Code, exhaustion is not required.

57. Second, litigation among the parties has been pending for six years in the state court action without any attempt by Charlene or the Tribe to sue in Tribal Court or any argument by them that the federal or state courts should require exhaustion of tribal court remedies before proceeding with the state court action; thus any claim that exhaustion is required at this late date is barred by principles of estoppel, laches, delay, acquiescence, waiver, and other equitable doctrines.

58. Third, the Tribe voluntarily injected itself into this dispute by filing an Amicus Curiae brief in support of Charlene's motion to transfer the state court case into Tribal Court. Brenda and Robert Leija filed a motion to strike the brief. As a result, none of the plaintiffs should be required to exhaust Tribal Remedies because the Tribe became a part of their state court SAPCR proceeding voluntarily and then accepted and wrongfully retains jurisdiction of a SAPCR over ICL in Tribal Court, despite the existence of a prior agreed order in that case regarding ICL.

59. Fourth, the Tribal Court action is essentially a collateral attack on decisions by the state court.

60. Fifth, the Tribal Court action does not arise out of a transaction, activity, or conduct by plaintiffs that occurred on the Tribe's land.

61. Sixth, the assertion of Tribal Court jurisdiction was made for purposes that bring it within the exceptions to the exhaustion principle. Namely, exhaustion is not required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

62. Seventh, adherence to the exhaustion requirement would serve no purpose other than delay.

63. Eighth, in these circumstances, tribal court exhaustion would not serve, but would violate, the goals of comity and efficiency, and would not tend to serve the overriding goal of the best interests of the children subject of the lawsuits.

**Plaintiffs are entitled to an injunction against further proceedings in the Tribal Court and against Charlene exercising exclusive possession of ICL.**

64. Charlene's pursuit of the Tribal Court action, and the Tribal Court's attempt to exercise jurisdiction over the Tribal Court action and plaintiffs, is contrary to federal constitutional requirements, to other state and federal law, and to the binding and enforceable promises by Charlene to Gilbert that the 365th Judicial District Court of Maverick County had and would retain continuing exclusive jurisdiction over the matters between them. Plaintiffs never consented to Tribal Court jurisdiction, and indeed Charlene and Gilbert expressly agreed that all future disputes regarding

JOL and ICL would be heard in the 365th Judicial District Court of Maverick County.

65. The Tribal Court's exercise of jurisdiction poses an immediate threat of irreparable harm to plaintiffs for which no adequate legal remedy exists. The irreparable harm arises from a number of circumstances:

   a. First, plaintiffs face the risk of a judgment by a court that has no jurisdiction over them. At the very least, plaintiffs face the prospects of inconsistent judgments from the Tribal Court, the 365th Judicial District Court of Maverick County, and this Court if an injunction is not issued.

   b. Second, if this Court lets the Tribal Court action proceed, there is a high potential that the State Court action—an action that has already been pending for almost a year and is ready for trial—will be stopped in its tracks. If that happens, then when a later tribunal determines that the Tribal Court lacks jurisdiction, the State Court action will have to start all over again.

   c. Third, the Tribal Court's exercise of jurisdiction would deny plaintiffs the benefit of the explicitly bargained-for exclusive continuing jurisdiction in the 365th Judicial District Court of Maverick County, Texas.

   d. Fourth, a child's life hangs in the balance during this effort at delay tactics by Charlene. The parties' rights as to ICL have been

determined previously by the State Court action and Charlene is ignoring those rulings, having taken ICL from Tribal Daycare and removed her to the reservation. Charlene refuses to allow Gilbert to exercise his rights under the Agreed Order entered in State Court and is in contempt of that order. Moreover, she should not be allowed to collaterally attack those rulings—that she agreed to—and create more delay an uncertainty in ICL's life. ICL lived with her paternal aunt and uncle for years, and then recently was stolen by Charlene. It is not in the best interest of the minor child that the status quo be upended so that Charlene can pretend, for the first time in her life, to behave like a mother.

e. Finally, there is a great miscarriage of justice and due process for Brenda and Robert Leija if the Tribal Court continues to interfere with their efforts to secure conservatorship of the children in the 365th Judicial District Court of Maverick County. There is no guarantee that plaintiffs Brenda and Robert Leija could participate in the Tribal Court litigation even if they so desired. The Tribal Court could deny them permission to intervene because they are not Tribal members, or, by choosing not to admit the attorney of their choice to practice before the Tribal Court. Even if they were allowed to intervene in Tribal Court, plaintiffs would be forced to expend unnecessary time, effort, and expense that they will be

unable to recoup litigating the Tribal Court action in the Tribal Court, which does not have jurisdiction over them.

66. The irreparable harm to plaintiffs in the absence of injunctive relief outweighs any hardship to the Tribe and Charlene if injunctive relief is granted, particularly given that there is no longer a TRO in place, and there is no ruling that would support Charlene stealing ICL from Tribal Daycare and exercising exclusive possession over her.

67. The issuance of an injunction against further proceedings in the Tribal Court and enjoining Charlene from exercising exclusive possession of ICL will serve the public interest in enforcing the law of Texas regarding the continuing exclusive jurisdiction held and maintained by state courts rendering orders in SAPCR cases, ensuring the proper allocation of jurisdiction and authority between federal, state and tribal courts, and not allowing a disappointed tribal litigant to discard a forum she agreed to submit to, and in fact, requested substantial relief from, in favor of a Tribal one, at her leisure.

68. Accordingly, plaintiffs seek an immediate preliminary injunction against Charlene exercising exclusive possession over ICL and an immediate preliminary injunction against further proceedings in the Tribal Court.

**Plaintiffs are entitled to declaratory relief determining that the Tribal Court has no jurisdiction.**

69. All prior paragraphs are incorporated by reference.

70. An actual and justiciable controversy currently exists between plaintiffs, the Tribe and Charlene concerning the Tribal Court's jurisdiction over plaintiffs, the child ICL and the Tribal Court action. A declaration by this Court as to the Tribal Court's jurisdiction would terminate the controversy giving rise to this cause of action.

71. Based on the allegations above, plaintiffs are entitled to a declaration that the Tribal Court lacks jurisdiction over Plaintiffs and the Tribal Court action, that all orders issued in Case No. 18-160 are void; and that until further order of the 365th Judicial District Court in Case No. 12-06-27527-MCVAJA, the Agreed Order dated November 9, 2016 governs the relationship of the parties, including conservatorship and the right to establish residence of the children.

WHEREFORE, plaintiffs respectfully seek the following relief:

A. A declaration that the Tribal Court lacks jurisdiction over plaintiffs and that all orders issued in Case No. 18-160 are void;

B. A declaration that until further order of the 365th Judicial District Court in Case No. 12-06-27527-MCVAJA, the Agreed Order dated November 9, 2016 governs the relationship of the parties, including conservatorship and the right to establish residence of the children;

C. An immediate preliminary injunction against Charlene exercising exclusive possession over ICL;

D. An immediate preliminary injunction against further proceedings in the Tribal Court;

E. An award of costs, attorney's fees and other disbursements allowed by law; and

F. Such further relief as the Court deems just and appropriate.

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 57, PLAINTIFFS REQUEST A SPEEDY HEARING ON THEIR REQUEST FOR DECLARATORY RELIEF.**

Dated this ____ day of June, 2018.

Respectfully submitted,

Elizabeth Conry Davidson
Attorney at Law
State Bar No. 00793586
conry@ecdlaw.com
926 Chulie Drive
San Antonio, Texas 78216
Telephone: (210) 380-4899
Facsimile: (210) 568-4036

By: /s/ Elizabeth Conry Davidson
         Elizabeth Conry Davidson

Attorney for Robert and Brenda Leija

GREGORY D. TORRES
ATTORNEY AT LAW, P.L.L.C.
Gregory D. Torres
State Bar No. 00791802
457 Jefferson Street
Eagle Pass, Texas  78852
Telephone: (830) 773-6811
Facsimile: (830) 773-6469
g_torres_law@hotmail.com

Attorney for Gilbert Leija